UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| | § | |
| v. | § | CASE NO: 1:07-CR-00066-P-BL-1 |
| | § | |
| | § | |
| | § | |
| WALTER EARL SMITH, II | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

The undersigned magistrate judge submits this Report and Recommendation to the United States district judge pursuant to 28 U.S.C. §636(b) and the referral Order dated March 3, 2016 (Doc. 60), addressing the motion to revoke WALTER EARL SMITH's term of probation.

I.  PROCEDURAL BACKGROUND

   A.   Original Conviction

On November 14, 2007, WALTER EARL SMITH, II (hereafter "Defendant") pleaded guilty to Count One of an indictment charging Convicted Felon in Possession of Firearms, 18 U.S.C. § 922(g)(1). (Doc. 30). On May 9, 2008, Defendant was sentenced to imprisonment for a term of 105 months, consecutive to any sentence imposed in Case Nos. 23252-A and 23291-A, and concurrently with any sentence imposed in Case No. 23251-A, all pending in the 42nd District Court of Taylor County, Texas, followed by a term of supervised release for three (3) years. (Doc. 30).

Supervised release commenced on November 16, 2015. (Doc. 50). Defendant was a direct release from federal custody with no approved release plan previously submitted. As such,

Defendant was temporarily residing at the Salvation Army in Lubbock, Texas, until such time as he could secure a stable residence. Defendant agreed to the modification of his conditions of supervised release to allow for his placement at the residential re-entry center facility located at Dismas Charities, Inc. (Dismas), 709 East 49th Street, Lubbock, Texas 79404, for a period of 180 days, or until such time as he was able to secure his own residence. (Doc. 48). On December 4, 2015, the Court concurred in modifying Defendant's supervision conditions to allow for his placement at Dismas for a period of no more than 180 days, to be released at the direction of the probation officer. (Doc. 49). Defendant began placement at Dismas on December 24, 2015.

On February 10, 2016, a Petition for Offender under Supervision was executed by the United States Probation Office (Doc. 50), requesting a violator's warrant for Defendant's arrest after violation of the conditions discussed below. The District Judge ordered the issuance of a warrant (id.), and such was returned executed on the same date. (Doc. 53).

**B.     Current Revocation Proceedings**

**(1)     Procedural History**

Before the Court is the Government's Motion to Revoke Probation dated February 13, 2016 (Doc. 52), requesting revocation of Defendant's term of supervised release and that Defendant be ordered to serve a sentence as determined by the Court.

Following Defendant' arrest, he appeared before the undersigned magistrate judge on February 18, 2016, for an initial appearance. (Doc. 55). A detention hearing and preliminary revocation hearing were conducted on March 3, 2016. (Doc. 61). Defendant, represented by counsel, contested probable cause and detention. Defendant testified on his own behalf, and the government elicited testimony from Senior Probation Officer Greg Cruz. At the conclusion of the

hearing, an Order of Detention and Finding Probable Cause was entered by the magistrate judge on March 3, 2016 (Doc. 62).

### (2) Violation Allegations

As indicated above, a violator's warrant was issued and Defendant was arrested for allegedly violating terms of his probation, specifically[1]:

### (a)

**Violation of Mandatory Condition**

The defendant shall not commit another federal, state, or local crime.

**Violation of Mandatory Condition**

The defendant shall not illegally possess a controlled substance.

**Violation of Standard Condition No. 7**

The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

**Nature of Noncompliance**

Walter Smith, II, violated these conditions of his supervised release on or about February 1, 2016, by committing the offense of Possession of Synthetic Narcotic, Penalty Group 2A, in violation of Texas Health and Safety Code § 481.1161, as referenced in Lubbock Police Department (LPD), Lubbock, Texas, Offense Report No. 16-4264, dated February 2, 2016, and committed against the peace and dignity of the state of Texas.

LPD offense reports reflected that on February 2, 2016, at approximately 2:32 p.m., an LPD officer responded to Dismas, located at 709 East 49th Street, Lubbock, Texas, in reference to narcotics found at the facility. The responding officer advised that he met with Ramona Gayle, Director of Dismas, who went to a "locked office and returned with a clear plastic baggy that contained a green leafy substance and a piece of paper," which were provided to the responding officer. Mrs. Gayle further informed the responding officer that Walter Earl Smith, II, was "found in possession of the substance on the previous night" at approximately 9:09 p.m. by monitors employed at the facility. Mrs. Gayle related that Mr. Smith and other residents were found in the bathroom at the facility, and monitors witnessed Mr. Smith discarding a plastic baggy into the trash can, though the baggy "missed the trash can, and the baggy fell to the floor." A monitor subsequently "picked up the

---

[1] Alleged violations taken from Petition for Offender under Supervision dated February 10, 2016.

baggy and observed the contents knowing that the substance appeared to be 'legal weed.'" Mrs. Gayle requested the confiscated substance be tested for documentation purposes. LPD reports reflected the responding officer tested the substance utilizing a "synthetic cannabinoids field test kit" which yielded a positive result and supporting "probable cause" that Mr. Smith "was in possession of a substance listed under penalty group 2A." LPD reports disclosed that the "baggy and its contents were taken to the police department and weighed on a digital scale resulting in a weight of .21 ounce. LPD reports furnished that the baggy and its contents were turned in to the police property room as evidence.

**(b)**

**Violation of Special Condition No. 1**

The defendant shall participate in a program (inpatient and/or outpatient) approved by the U.S. Probation Office for treatment of narcotic, drug, or alcohol dependency, which will include testing for the detection of substance use or abuse. The defendant shall abstain from the use of alcohol and/or all other intoxicants during and after completion of treatment. The defendant shall contribute to the costs of services rendered (copayment) at a rate of at least $25 per month.

**Nature of Noncompliance**

Walter Earl Smith, II, violated this condition of supervised release by using alcohol in or about December 2015 and January 2016. On December 24, 2015, Mr. Smith submitted a urine specimen to the U.S. Probation and Pretrial Services Office (USPPO), Lubbock, Texas, which tested positive for alcohol. On January 7, 2016, Mr. Smith admitted, both verbally and in writing, to Senior U.S. Probation Officer Greg Cruz (Sr. USPO Cruz) that he consumed alcohol on December 23, 2015. Additionally, Mr. Smith submitted a urine specimen on January 20, 2016, to the USPPO, Lubbock, Texas, which tested positive for alcohol. Further, Mr. Smith failed to comply with this condition of his supervised release as Texas Tech University Health Sciences Center/Southwest Institute for Addictive Diseases (TTUHSC/SWIAD), Lubbock, Texas, the local drug aftercare provider, advised that Mr. Smith failed to comply with copayment requirements as evidenced by his current delinquent balance of $50 as of January 7, 2016.

**(c)**

**Violation of Additional Condition (as per modification on December 4, 2015)**

The defendant shall reside in the residential re-entry center and successfully participate in the residential re-entry center program located at Dismas, 709 East 49th Street, Lubbock, Texas 79404, for a period of no more than 180 days, to be released at the direction of the probation officer. While there, the defendant will participate in its community corrections component. Passes to assist the defendant in completing the programs and/or re-entering the community may be issued with approval of the probation officer and/or the program review team.

**Nature of Noncompliance**

Walter Earl Smith, II, violated this condition of supervised release by failing to comply with rules and regulations of Dismas on or about February 1, 2016, by committing the offense of Possession of Synthetic Narcotic, Penalty Group 2A, in violation of Texas Health and Safety Code § 481.1161 as referenced in LPD Offense Report No. 16-4264, dated February 2, 2016, and further in violation of Bureau of Prisons regulations. Dismas officials have requested that Mr. Smith be discharged unsuccessfully from the facility pursuant to this violation.

### (3) Revocation Hearing

A Final Hearing on the Motion to Revoke Probation was held on March 22, 2016, before the magistrate judge. Defendant was represented by Chris Carnohan; the United States was represented by Assistant United States Attorneys Denise Williams and Juanita Fielden. The proceedings were electronically recorded.

Upon call of the matter, Defendant was placed under oath. The undersigned, having read the allegations contained in the Government's Motion to Revoke at the preliminary revocation hearing, inquired of Defendant whether he understood the allegations and whether he desired such allegations be read again. Defendant indicated he understood the allegations and waived a subsequent reading. The undersigned then explained to Defendant the statutory maximum terms of incarceration and supervised release as well as the sentencing options available to the Court. Defendant acknowledged his understanding and entered a plea of **not true** to the allegations contained in Section I.B (2) above, specifically: the Mandatory Conditions that Defendant not commit another federal, state, or local crime, and that he not illegally possess a controlled substance; Standard Condition No. 7; Special Condition No. 1; and the Additional Condition per modification dated December 4, 2015.

The Court advised the parties that, given the comprehensive testimony elicited in the preliminary revocation hearing, the Court would take notice of such prior testimony and neither

party would be required to duplicate such at the instant proceeding. The government indicated it would rely upon the prior evidence and declined to offer any new evidence. Defense counsel proceeded to call Mr. Kevin Hearn and Mr. Keith McCarty, both Monitors at Dismas; Officer Kraig Van Hoose of the Lubbock Police Department; and Sr. Probation Officer Greg Cruz.

Monitor Hearn testified from his Report dated February 2, 2016, which involved the incident of February 1, 2016, as discussed in Section I.B(2)(a) above. Monitor Hearn testified that, at approximately 9:10 p.m. on the date in question, while conducting dorm checks in the men's dorm, he entered the dorm #1 restroom. He noticed Defendant Smith and three other residents coming out of the back toilet stall area, and noticed a cigarette lighter on the sink and one in resident Delmasso's hand. Hearn confiscated both items of contraband, and residents Delmasso and Moreno exited the restroom. As Moreno exited, Monitor McCarty entered, and both McCarty and Hearn noticed Moreno staggering as he exited. Hearn and McCarty remained in the restroom with Defendant Smith and resident Sykes and conversed with them. Hearn testified that Sykes was not conversant, but that Defendant Smith's speech was slurred and that his demeanor was not normal. Hearn identified an example of Defendant's unusual behavior, which consisted of Defendant over-exaggerating the size of a box of paper towels by outstretching his arms wide. He further stated that Defendant's answers were not appropriate to the questions asked. Hearn then described Defendant walking toward a trash can and lobbing some paper toward it, but stated the paper missed the can and fell to the ground, unbeknownst to Defendant. Neither Hearn nor McCarty detained Defendant Smith or resident Sykes, but McCarty subsequently picked up the paper that Defendant caused to be on the floor. The paper, which appeared to be a torn dollar bill (and later testified to be a reproduction of currency), contained a green leafy substance inside, which Monitor McCarty confiscated, put in a plastic bag, and later placed in the Director's box

along with a report of the incident. Monitor Hearn confirmed that the monitor staff had access to the Director's box. He also explained that Defendant Smith had asked him earlier for paper towels to clean the restroom, but that such was before the designated time for cleaning, and that the restroom was not clean when he entered at approximately 9:10 p.m. Monitor Hearn also confirmed that the substance Defendant Smith attempted to discard was later identified as synthetic cannabinoid, or K-2, in a small quantity which could have easily been disposed of in the toilet.

Monitor McCarty confirmed the information in Hearn's report, and further testified that Defendant Smith appeared to be under the influence of "something" based upon his demeanor and speech. He stated that he personally observed Defendant throw the paper object toward the trash, that he later picked it up and examined it, finding inside a green leafy substance. He confirmed that he took possession of the object, placed the paper and substance in a plastic bag, and dropped the bag in the Director's box.

Officer Van Hoose testified from his incident report dated February 9, 2016. He stated that he responded, on February 2, 2016, to call from Dismas regarding narcotics found at the facility on the preceding day. He indicated that he met with Ramona Gayle, the Director of Dismas, who went into a "locked office and returned with a clear plastic baggy that contained a green leafy substance and a piece of paper." Director Gayle advised Officer Van Hoose that Defendant Smith and other residents were found in the bathroom of the facility the previous night, that Defendant Smith attempted to discard a plastic baggy into the trash can, that the baggy missed the trash and fell to the floor and was picked up by one of the monitors, who observed the contents which appeared to be "legal weed." Director Gayle requested the contents be tested for documentation purposes, and Officer Van Hoose tested the substance using a "synthetic cannabinoids field test kit" which yielded a positive result for synthetic cannabinoids. Officer Van Hoose wrote in his

report that "there appeared to be a chemical reaction and the test strip slightly turned a shade of yellow showing a positive test, and probable cause that [Defendant Smith] was in possession of a substance listed under penalty group 2A." Officer Van Hoose confirmed that he did not speak to either Monitor Hearn or McCarty or Defendant Smith, and further stated that, while synthetic drugs do not test as definitively as drugs such as cocaine or methamphetamine because of the ever-changing compounds used to avoid detection, he did obtain a positive result for synthetic cannabinoid. Upon transfer of the substance to the police department, it was weighed at .21 ounces and turned over to the property room as evidence.

Senior Probation Officer Cruz, who testified at length at the preliminary hearing, testified only briefly, and defense counsel rested.

In closing, defense counsel reiterated themes from the preliminary hearing and included arguments based on the evidence presented that day – that Ditmas employees, including the Director, held a grudge against Defendant; that Defendant confessed and took responsibility for allegations of alcohol consumption, even though he did not understand that his conditions of supervision required an absolute abstention from any alcohol consumption; that had Defendant possessed the K-2, he would have disposed of it while in the restroom stall once Monitors Hearn and McCarty entered the room, and would not have tried to throw it in the trash can in their presence; that other residents exited the restroom without being questioned or detained; that Defendant's discussion regarding paper towels for use in his cleaning duties demonstrated he was not under the influence as alleged by the monitors, but instead that he was able to converse normally about his cleaning duties; and that the chain of custody of the discarded paper and substance was not strict, as multiple employees had access to the specimen once placed in the Director's box by Monitor McCarty, which leaves doubt as to the validity of the testing and

accusations.

The government countered with the direct testimony of Monitors Hearn and McCarty, who had observed Defendant's behavior in the restroom and formed an opinion that he was under the influence of intoxicants; that both monitors observed Defendant attempt to dispose of the substance which was later determined to be K-2; and that Monitor McCarty took custody of the substance and took reasonable measures to secure the package pending review by the Director.

Defendant was subsequently advised of his right to allocute before the district judge, but that he could consent to making a statement in mitigation before the magistrate judge. Defendant consented, orally and in writing, to allocution before the magistrate judge. Defendant then spoke candidly, admitting he had used drugs in the past, but that he had not had any illicit drug use since his release, nor any positive tests for drug use. He stated he had never "been dumb with his business," explaining that he would not have attempted to throw drugs away in front of two officers when he could have flushed them, if in fact he had possessed such. Defendant spoke of his time in El Reno, how he made use of his incarceration and received job training certifications while there so that he could gain employment upon his release. He spoke of his granddaughter, and that he was not only trying to do what was right for himself, but for her. He asked for a chance to prove himself, which he had not received to date because of wrongful charges against him.

### (4) Revocation Standards and Application

In order to revoke a term of supervised release, a court must find by a preponderance of the evidence that the defendant violated a condition of his release. 18 U.S.C. § 3583(e)(3); *United States v. Spraglin*, 418 F.3d 479, 480 (5th Cir. 2005). "[R]evocation of probation does not require proof sufficient to sustain a criminal conviction. All that is required is enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not

9

met the conditions of probation." *Id.* At 481(quoting *United States v. Garza*, 484 F.2d 88, 89 (5th Cir. 1973). A decision to revoke supervised release is reviewed under an abuse of discretion standard. *Spraglin*, at 480. "In considering a challenge to the sufficiency of the evidence, [an appellate] court views the 'evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the Government.'" *United States v. Watts*, 442 Fed. App'x. 144 (5th Cir. 2011)(quoting *United States v. Alaniz-Alaniz*, 38 F.3d 788, 792 (5th Cir. 1994).

The allegations of Defendant's failure to abide by conditions of his supervised release primarily[2] focus on the alleged offense of Possession of Synthetic Narcotic, Penalty Group 2A, in violation of Texas Health and Safety Code § 481.1161, as referenced in Lubbock Police Department, Lubbock, Texas, Offense Report No. 16-4264, dated February 2, 2016, and committed against the peace and dignity of the State of Texas. (*See* Section I.B(2)(a),(c) above). Defendant denied the allegations. Consequently, the Court must assess the evidence at hand, including a determination of witness credibility, in deciding whether a preponderance of the evidence supports a conclusion of non-compliance by Defendant.

Defendant, in simplest terms, contends that a "grudge" held against him by Dismas staff resulted in the above charges being filed and denied possession of the contraband. He further contends that any reasonable person would have disposed of the K-2 in the toilet prior to exiting the bathroom stall and that the chain of custody regarding the substance was inadequate. The government relies on the testimony of Monitors Hearn and McCarty regarding Defendant's demeanor and their eyewitness account of his attempt to dispose of the substance at issue. As described above in Section I.B(3), the Court observed the testimony of Monitors Hearn and

---

[2] The allegation that Defendant violated Special Condition No. 1, Section I.B(2)(b) above, namely, that he "abstain from the use of alcohol ..." is not at issue, as Defendant admits to using alcohol on December 23, 2015.

McCarty, Officer Van Doose, and Defendant Smith. The reports of Hearn and Van Doose have been reviewed. The Court finds the testimony of Hearn, McCarty, and Van Doose credible, and Defendant's "conspiracy theory" unpersuasive and his testimony unbelievable. Therefore, viewing the evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the Government, the Court finds by a preponderance of the evidence that Defendant violated the conditions of his supervised release.

## II. FINDINGS OF THE COURT

   i. Defendant pleaded **not true** to the allegations that he violated conditions of his supervised release as contained in the Government's Motion to Revoke, and set forth in Section I.B(2) above, specifically: the Mandatory Conditions that Defendant not commit another federal, state, or local crime, and that he not illegally possess a controlled substance; Standard Condition No. 7; Special Condition No. 1; and the Additional Condition per modification dated December 4, 2015;

   ii. the Defendant was competent to make the decision to plead not true to the allegations;

   iii. The Defendant had both a factual and rational understanding of the proceedings against him;

   iv. The Defendant did not suffer from any physical or mental impairment that would affect his ability to fully understand the charges against him or the consequences of his plea;

   v. The Defendant was sane and mentally competent to stand trial for these proceedings and to assist his attorney in the preparation and conduct of his defense;

   vi. The Defendant received a copy of the Government's Motion to Revoke, either read or had it read to him, had adequate opportunity to discuss the charges against him with his attorney, and ultimately understood the charges alleged against him;

    vii. A preliminary revocation hearing was conducted and an Order of Detention and Finding of Probable Cause was subsequently entered by the magistrate judge;

    viii. At the final revocation hearing, Defendant understood all of his statutory and constitutional rights, including those mandated by Rule 32.1(b)(2)(A-E); and

    ix. For the reasons set forth above, Defendant was found to have violated the conditions of his supervised release.

## III. SENTENCING

### A. Factors

The Court may revoke a term of supervised release after finding that a defendant has violated a condition thereof. *See* 18 U.S.C. § 3583(e)(3). Upon revocation, a court should impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a). *See* § 3583(c). The sentencing court is to consider:

    i. The nature and circumstance of the offense and the history and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1);

    ii. The need for the sentence imposed to afford adequate deterrence to criminal conduct, see 18 U.S.C. § 3553(a)(2)(B); to protect the public from further crimes of the defendant, see 18 U.S.C. § 3553(a)(2)(C); and to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner, see 18 U.S.C. § 3553(a)(2)(D)[3];

    iii. The kinds of sentence and the applicable sentencing range established in the United States Sentencing Commission's Sentencing Guidelines pursuant to section 994(a)(3) of title 28, United States Code, any amendments thereto, and any associated policy statements made by act of Congress or issued by the Sentencing Commission, see 18 U.S.C. § 3553(a)(4)(B);

    iv. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, see 18 U.S.C. § 3553(a)(6); and

---

[3] Pursuant to *U.S. v. Miller*, 634 F.3d 841 (5th Cir. 2011), the Court may not consider the factors listed in 18 U.S.C. § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when revoking a term of supervised release. Further, the sentencing court may not impose or lengthen a prison term in order to foster a defendant's rehabilitation. *U.S. v. Tapia*, 131 S.Ct. 2382 (2011).

    v.      The need to provide restitution to any victims of the offense, see 18 U.S.C. § 3553(a)(7).

The undersigned has carefully considered the factors listed in 18 U.S.C. §§ 3583(e) and 3553(a) as applied to this defendant.

### B.    Statutory and Guideline Provisions

The classification of Defendant's underlying criminal offense results in a two-year statutory maximum term of incarceration upon revocation of supervised release. *See* 18 U.S.C. § 3583(e)(3). United States Sentencing Guideline 7B1.4(a) suggests a revocation range of six to twelve months imprisonment, plus 131 days of unserved community confinement, based upon Defendant's criminal history category of IV and the admitted Grade C violations. Revocation of supervised release and a term of imprisonment not to exceed the maximum provided in 18 U.S.C. § 3583(e)(3) is mandatory, given Defendant's violation of possessing a controlled substance. *See* 18 U.S.C. § 3583(g)(1).[4]

Defendant may also be placed back on supervised release following any term of imprisonment imposed upon revocation. The maximum term of supervised release must not exceed the term of supervision authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment imposed upon revocation. *See* 18 U.S.C. § 3583(h); see also *U.S. v. Jackson*, 559 F.3d 368 (5th Cir. 2009). Accordingly, Defendant is subject

---

[4] *See*, however, the exception contained in § 3583(d): "The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test." The undersigned has carefully considered the factors listed in 18 U.S.C. §§ 3583(d). Defendant is charged with possessing a controlled substance, not refusing to comply with drug testing.

to a term of supervised release of three (3) years, less any term of imprisonment imposed upon revocation of his current supervised release.

## IV. CONCLUSION

Upon consideration of the foregoing, the magistrate judge **RECOMMENDS**:

i. **that Defendant be found to have violated the conditions of his supervised release** as set forth in Section I.B(2) above, specifically: the Mandatory Conditions that Defendant not commit another federal, state, or local crime, and that he not illegally possess a controlled substance; Standard Condition No. 7; Special Condition No. 1; and the Additional Condition per modification dated December 4, 2015;

ii. **that his supervised release be REVOKED**;

iii. **that he be SENTENCED** to the custody of the Federal Bureau of Prisons **for a period of twelve (12) months**; and

iv. **that no additional term of supervised release be imposed.**

### NOTICE OF OPPORTUNITY TO FILE OBJECTIONS TO REPORT AND RECOMMENDATION

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate

judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SIGNED this 24th day of March, 2016.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE